UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

IDAN DROR,

          Plaintiff,

    v.

KENU, INC.,

          Defendant.

Case No. 19-cv-03043-LB

**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS**

Re: ECF No. 26

## INTRODUCTION

Plaintiff Idan Dror (under the brand name IDStore) sold a cellphone-holder mount for cars ("IDStore Mount") through the website Amazon.

In December 2017, Amazon told Mr. Dror it was removing the sales listings for the IDStore Mount from its website because it received a notice from defendant Kenu, Inc. saying that the IDStore Mount infringes patents that Kenu owns, namely, patent number 9,080,714 ("714 Patent") and/or patent number 9,718,412 ("412 Patent"). On January 8, 2018, Amazon sent Mr. Dror a notice saying, "[T]he [IDStore Mount] was removed pursuant to a lawsuit settlement between Kenu and Amazon. We will not relist these items without a retraction of the notice from Kenu." On January 9, 2018, Mr. Dror (through his attorneys) sent Kenu a letter arguing that his IDStore

Mount does not infringe the 412 Patent. On January 12, 2018, Kenu sent a letter in response, stating:

> We remain firm in our belief that the IDStore Universal Air Vent Cellphone Mount infringes Kenu's intellectual property rights. You may have noted that Kenu actively enforces its patent portfolio. While Kenu tries to resolve matters informally, we have zero tolerance for infringing items. Although we had not been planning to file suit against IDStore in view of the Amazon takedown, please be aware that Kenu will not hesitate to seek prompt and effective judicial relief should this matter be pressed further.

Mr. Dror sent follow-up letters to Kenu and Amazon but has been unable to convince Amazon to relist his IDStore Mount.

Mr. Dror now brings this declaratory-judgment lawsuit against Kenu, seeking a declaration that (1) his IDStore Mount does not infringe the 714 and 412 Patents and does not infringe two other continuation patents owned by Kenu, patent number 9,956,923 ("923 Patent") and patent number 10,315,585 ("585 Patent," and together with the 714 Patent, the 412 Patent, and the 923 Patent, "Patents"), (2) the Patents are invalid, and (3) the Patents are unenforceable based on purported inequitable conduct by Kenu in prosecuting the Patents. Mr. Dror also brings a claim under the California Unfair Competition Law ("UCL"), California Business and Professions Code § 17200 et seq.

Kenu moves to dismiss on several grounds. First, it argues that the court lacks subject-matter jurisdiction because it did not threaten Mr. Dror, Amazon, or any of Mr. Dror's customers with an infringement lawsuit, and thus there is no "actual controversy" "of sufficient immediacy and reality" to warrant a declaratory-judgment lawsuit. Moreover, it contends that even if Mr. Dror won a declaratory judgment, the declaration would be advisory, and Mr. Dror would lack Article III standing, because Amazon (which is not a party to this litigation) would be under no obligation to relist Mr. Dror's product. In addition, it argues that there is no case or controversy regarding the 923 or 585 Patents because Mr. Dror did not allege that Kenu expressly mentioned the 923 or 585 Patents to anyone in connection with Mr. Dror's IDStore Mount. Finally, it contends that Mr. Dror did not adequately plead plausible invalidity, inequitable-conduct, and UCL claims.

The court held a hearing and grants Kenu's motion to dismiss Mr. Dror's inequitable-conduct and UCL claims and gives Mr. Dror leave to amend. The court otherwise denies Kenu's motion to dismiss.

## STATEMENT[1]

### 1. The IDStore Mount and Mr. Dror's Interactions with Amazon and with Kenu

Plaintiff Idan Dror is an Amazon seller using the seller account "IDStore."[2] Mr. Dror, under the IDStore brand name, sold an Air Vent Cellphone Mount Holder on Amazon.[3]



In December 2017, Kenu filed a complaint with Amazon claiming that the IDStore Mount infringes Kenu's 714 and 412 Patents.[4] On December 19, 2017, Amazon sent Mr. Dror a notice that stated in part:

> My name is Haidee and I am the agent that spoke to you on the phone today. It was a pleasure to talk to you about your products.
>
> As we discussed, offers for certain portable hands-free in-car mounts for mobile or smartphone devices that attach to any car air vent have been removed from our site (see list below). We took this action because we were notified by a patent owner that these items allegedly infringe their U.S. Utility Pat. No. 9,080,714 and/or U.S. Utility Pat. No. 9,718,412.

---

[1] Unless otherwise stated, the facts in the Statement are allegations from the First Amended Complaint ("FAC") and are presumed to be true for the purposes of this order.

[2] FAC – ECF No. 25 at 2 (¶ 4). Citations refer to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of documents.

[3] *Id.* at 2 (¶ 4), 9 (¶ 39); FAC Ex. D (Amazon listings) – ECF No. 25-5 at 2–3.

[4] FAC – ECF No. 25 at 9 (¶ 39).

> Items that infringe another party's patent are prohibited. For more information on this policy, search on &&"Prohibited Content&&" in seller Help.
>
> To resolve this dispute, we suggest that you contact the patent owner directly:
>
> PHU PHAN[,] Director of Operations[,] Kenu, Inc.[,] 560 Alabama Street[,] San Francisco, CA 94110[,] phu@kenu.com
>
> If you resolve this matter with the rights owner, please advise them to contact us at notice-dispute@amazon.com to withdraw their complaint. We ask that you refrain from posting items manufactured by this rights owner until you have resolved this matter.[5]

Amazon removed the listings for the IDStore Mount.[6] On December 22, 2017, Amazon sent Mr. Dror another notice informing him that the IDStore Mount listings had been removed that stated in part:

> We received a report from a rights owner that believes the items at the end of this email infringe their patent.
>
> We may let you list this content against if we receive a retraction from the rights owner:
>
> — Phu Phan
>
> — phu@kenu.com
>
> If the rights owner agrees to retract the complaint, they must send the retraction to us at notice-dispute@amazon.com
>
> If you believe that the reported content does not infringe the rights owner's patent, you may email notice-dispute@amazon.com with supporting information.
>
> We consider allegations of intellectual property infringement a serious matter. If we receive more complaints about your listings, we may not allow you to sell on Amazon.com.[7]

Mr. Dror wrote to Amazon attaching a letter from his intellectual-property attorneys.[8] Mr. Dror's cover message to Amazon stated:

> Please see the attached letter from our intellectual property attorneys, proving that the subject listings do not infringe intellectual property rights of the complainant.

---

[5] *Id.*; FAC Ex. E-1 (Amazon notice) – ECF No. 25-6 at 2.

[6] FAC – ECF No. 25 at 9 (¶ 40).

[7] FAC – ECF No. 25 at 9 (¶ 41); FAC Ex. E-1.1 (Amazon notice) – ECF No. 25-6 at 5.

[8] FAC Ex. E-1.2 (Dror/Amazon email chain) – ECF No. 25-6 at 7–8.

As detailed in the attached letter, it is clear that that the Air Vent Cellphone Mount Holder For Cars we sell is substantially different from the complainant's patent since our product do NOT include two rods, springs inserted one each over each rod and held in place by a screw affixed to an end of the respective rod.

In view of the above and the attached document, we kindly ask you to reinstate our listings as soon as possible. We look forward to hearing from you and will be happy to provide any additional documents/information that you may need.[9]

On January 8, 2018, Amazon responded, "Thank you for your messages. The items were removed pursuant to a lawsuit settlement agreement between Kenu and Amazon.com. We will not relist these items without a retraction of the notice from Kenu."[10]

On January 9, 2018, Mr. Dror, through his attorneys, sent Kenu a letter asserting that the IDStore Mount does not infringe the 412 Patent.[11] Mr. Dror's letter asserted that Claim 1 of the 412 Patent claims "an adjustable portable device holder comprising: an adjustable clamping element . . .; the adjustable clamping element further comprising two rods . . . and springs inserted one each over each rod and held in place by a screw affixed to an end of the respective rod," whereas the IDStore Mount contains no rods, no springs inserted over any rods, and no screw affixed to the end of any rods.[12]

On January 12, 2019, Kenu's General Counsel sent a letter in response to Mr. Dror, writing:

We are in receipt of your letter of January 9, 2018. While we note your concern relating to the Amazon complaint, we find your letter confusing and unpersuasive. With respect to the assertions of non-infringement set forth in your letter, please note that you have cited US Patent No. 9,718,412 and then mistakenly argued about language from a different patent.

We remain firm in our belief that the IDStore Universal Air Vent Cellphone Mount infringes Kenu's intellectual property rights. You may have noted that Kenu actively enforces its patent portfolio. While Kenu tries to resolve matters informally, we have zero tolerance for infringing items. Although we had not been planning to file suit against IDStore in view of the Amazon takedown, please be

United States District Court
Northern District of California

---

[9] *Id.*

[10] FAC – ECF No. 9 (¶ 42); FAC Ex. E-1.2 (Dror/Amazon email chain) – ECF No. 25-6 at 7.

[11] FAC – ECF No. 9 (¶ 43); FAC Ex. E-2 (Dror letter to Kenu) – ECF No. 25-6 at 10–13.

[12] FAC Ex. E-2 (Dror letter to Kenu) – ECF No. 25-6 at 11–12.

aware that Kenu will not hesitate to seek prompt and effective judicial relief should this matter be pressed further.

This letter is not intended to be a complete statement of Kenu rights and shall not be construed as a waiver of any legal or equitable rights or remedies going forward, all of which are expressly reserved.[13]

On January 21, 2018, Mr. Dror, through his attorneys, sent Kenu a letter in response, arguing again that the IDStore Mount does not infringe the 412 Patent.[14] Mr. Dror's letter asserted that:

1. Claim 1 of the 412 Patent claims "[a] portable device holder comprising: . . . a mounting element . . .; the mounting element also including four mounting arms . . . converging towards one another to define at least two different sized mounting slots when the four mounting arms are not engaged with any mounting surface," whereas the IDStore Mount has only two (not four) mounting arms and does not have two different sized mounting slots,[15]

2. Claim 13 of the 412 Patent claims "[a] portable device holder comprising: an adjustable clamping element . . . comprising one or more bias members . . . where the one or more bias elements is/are in communication with a corresponding rod of the adjustable clamping element, and an expandable portion of the adjustable clamping element is translatable along the corresponding rod; . . . and wherein a fastener secures each of the one or more compression or torsion springs to the corresponding rod," whereas the IDStore Mount does not have rods,[16]

3. Claim 16 of the 412 Patent claims "[a] portable device holder comprising: . . . a mounting element . . .; the mounting element including a plurality of mounting arms extending away from the second side of the base plate and spaced apart and converging toward one another to form at least a first mounting slot and a second mounting slot,"

---

[13] FAC – ECF No. 25 at 10 (¶ 44); FAC Ex. E-3 (Kenu letter to Dror) – ECF No. 25-6 at 15.

[14] FAC – ECF No. 25 at 10 (¶ 45); FAC Ex. E-4 (Dror letter to Kenu) – ECF No. 25-6 at 17–23.

[15] FAC Ex. E-4 (Dror letter to Kenu) – ECF No. 25-6 at 17–18.

[16] *Id.* at 18–19.

whereas the IDStore Mount does not have a plurality of mounting arms and has only one (not two) mounting slot,[17]

4. Claim 17 of the 412 Patent claims "[a] portable device holder comprising: an adjustable clamping element . . .; the adjustable clamping element also including a rod, wherein the adjustable arm of the adjustable clamping element is translatable, along the rod, relative to the main body of the adjustable clamping element," whereas the IDStore Mount does not have a rod,[18] and

5. Claim 19 of the 412 Patent claims "[a] portable device holder comprising: . . . a mounting element . . .; wherein the mounting element comprises a metal or alloy sheet stamped to form the base plate with the first and second mounting arms extending from the base plate," whereas the IDStore Mount does not include metal or alloy and is made entirely out of plastic.[19]

Kenu did not respond to Mr. Dror's January 21, 2018 letter.[20] On July 20, 2018, Mr. Dror, through his attorneys, sent Kenu another letter requesting that it withdraw its complaint to Amazon.[21] Kenu did not respond to Mr. Dror's July 20, 2018 letter.[22]

On April 2, 2019, Mr. Dror sent Amazon a letter (via email to patent-evaluation@amazon.com) explaining why the IDStore Mount purportedly does not infringe the 412 Patent and requesting reinstatement of the IDStore Mount sales listings.[23] Amazon responded that "Neutral patent evaluation is currently an invite-only process that may be offered to registered patent rights owners. At this time, only patent owners can initiate this process. Please know that patent-evaluation@amazon.com is not an appropriate channel for notices of infringement or appeals and

---

[17] *Id.* at 20–21.

[18] *Id.* at 21–22.

[19] *Id.* at 22–23.

[20] FAC – ECF No. 25 at 10 (¶ 48).

[21] *Id.* (¶ 47); FAC Ex. E-5 (Dror letter to Kenu) – ECF No. 25-6 at 25–26.

[22] FAC – ECF No. 25 at 10 (¶ 48).

[23] *Id.* (¶ 49); FAC Ex. E-6 (Dror letter to Amazon) – ECF No. 25-6 at 28–30.

they will not be reviewed. Appeals should be directed to notice-dispute@amazon.com for proper processing."[24]

On August 9, 2019, Mr. Dror sent Amazon a letter (via email to notice-dispute@amazon.com) explaining why the IDStore Mount purportedly does not infringe the 412 Patent and requesting reinstatement of the IDStore Mount sales listings.[25] On August 10, 2019, Amazon responded, writing:

> Thank you for your message. We cannot accept your appeal because it does not address the report we received from the rights owner. Please provide the following information so we can process your appeal:
>
> — Proof of product authenticity (e.g., invoice, Order ID, licensing agreement, letter of authorization). It must clearly prove that your products do not infringe any intellectual property rights. Please send this information, any other documentation, and a list of impacted ASINs [Amazon Standard Identification Numbers] to notice-dispute@amazon.com.[26]

To date, Amazon has refused to reinstate the sales listings for the IDStore Mount.[27]

### 2. Mr. Dror's Allegations Regarding Patent Unenforceability

Mr. Dror alleges that the Patents are unenforceable based on purported inequitable conduct by Kenu in connection with the prosecution of the 714 Patent.

The named inventors listed on the 714 Patent are Kenneth Y. Minn and David E. Yao.[28] In May 2013, Mr. Minn and Mr. Yao filed the patent application that ultimately cumulated in the 714 Patent — patent application number 13/897,062 ("062 Application") — as a continuation-in-part of an earlier patent Kenu owns, patent number D690,707 ("D707 Patent").[29]

---

[24] FAC Ex. E-6 (Amazon email to Dror) – ECF No. 25-6 at 31.

[25] FAC – ECF No. 25 at 11 (¶ 50); FAC Ex. E-7 (Dror email to Amazon) – ECF No. 25-7 at 2–5.

[26] FAC – ECF No. 25 at 11 (¶ 51); FAC Ex. E-8 (Amazon email to Dror) – ECF No. 25-8 at 2.

[27] FAC – ECF No. 25 at 9 (¶ 40), 11 (¶ 52).

[28] 714 Patent – ECF No. 25-1 at 2.

[29] FAC – ECF No. 25 at 4 (¶ 16), 7 (¶ 30).

In December 2014, the U.S. Patent and Trademark Office ("USPTO") issued a notice that it was rejecting claims in the 062 Application as obvious in light of certain prior art, including a prior patent application — patent application number 2014/0097306 ("306 Application").[30] The 306 Application, titled "Adjustable Mounting Clip and System Using Same," was filed in November 2012 by DayMen US, Inc. and listed as its inventors Eric C. Hale, Noah Balmer, and Mr. Yao.[31] (DayMen and its subsidiary Joby, Inc. were Mr. Yao's former employers.[32]) The USPTO said that Claim 1 of the 062 Application was obvious in light of the 306 Application's disclosure of an "adjustable clamping element" and teachings related to the adjustable clamping element.[33]

In April 2015, Mr. Yao submitted to the USPTO a declaration stating that he was one of the named inventors on the 062 Application, that he was also one of the named inventors on the 306 Application, and that he was the one who had contributed the adjustable mounting clip and use of gripping clips disclosed in the 306 Application.[34]

In May 2015, Kenu submitted an additional response to the USPTO stating that (among other things) the 306 Application was not prior art for purposes of rejecting claims in the 062 Application because the subject matter from the 306 Application that the USPTO cited had been invented by Mr. Yao himself.[35]

---

[30] *Id.* at 8 (¶ 34); Def. MTD Ex. A (714 Patent prosecution history – USPTO Office Action) – ECF No. 26-1 at 6. The court can take judicial notice of patent-prosecution histories as a matter of public record. *Data Engine Techs. LLC v. Google LLC*, 906 F.3d 999, 1008 n.2 (Fed. Cir. 2018).

[31] 306 Application – ECF No. 26-1 at 23.

[32] FAC – ECF No. 25 at 5 (¶¶ 21–22).

[33] Def. MTD Ex. A (714 Patent prosecution history – USPTO Office Action) – ECF No. 26-1 at 6.

[34] Def. MTD Ex. C (714 Patent prosecution history – Yao Decl.) – ECF No. 26-1 at 20–21 (¶¶ 2–4); *accord* FAC – ECF No. 25 at 8 (¶ 35) ("In particular, on information and belief, Mr. Yao submitted a declaration — under penalty of perjury — falsely representing to the USPTO that he solely invented 'internal structure and working of the adjustable mounting clip' and 'the use of gripping clips.'").

[35] Def. MTD Ex. D (714 Patent prosecution history – Kenu Response to USPTO Office Action) – ECF No. 26-1 at 48.

United States District Court
Northern District of California

The USPTO accepted Mr. Yao's declaration, disqualified the 306 Application as prior art, and, in July 2015, issued the 062 Application as the 714 Patent.[36]

Mr. Dror alleges that "[o]n information and belief, [Mr. Yao's declaration] was false because other inventors at Joby had contributed to the [306 Application] while Mr. Minn was a co-inventor of the '062 patent application, who also contributed to the conception of these elements."[37] Mr. Dror claims that the 714 Patent and the other Patents at issue (which are continuations of the 714 Patent) are unenforceable due to this alleged inequitable conduct in connection with the prosecution of the 714 Patent.[38]

Separately, Mr. Dror also alleges that Kenu allegedly omitted a John Duran as a co-inventor on the D707 Patent (a predecessor to the Patents at issue).[39] Mr. Dror alleges that Mr. Duran should have been named as a co-inventor and that Kenu fraudulently omitted him to prevent his employer, CamelBak Products, LLC, from having an ownership interest in the D707 Patent.[40] Mr. Dror provides no further detail about who Mr. Duran or CamelBak are, what relationship (if any) they have to Kenu or the D707 Patent, why Mr. Duran should have been listed as an inventor on the D707 Patent, or what Kenu supposedly did to exclude him.[41]

## ANALYSIS

### 1. Subject-Matter Jurisdiction

Kenu argues that Mr. Dror fails to establish subject-matter jurisdiction because he does not plausibly allege a justiciable case or controversy between the parties with respect to any of the

---

[36] FAC – ECF No. 25 at 8 (¶ 36).

[37] Id. (¶ 35).

[38] Id. (¶ 37). Additionally, Mr. Dror also makes various allegations about Mr. Yao's interactions with Joby and DayMen, namely, that Mr. Yao developed aspects of the D707 Patent while he was working at Joby and DayMen without telling them that he was doing so, despite having signed a nondisclosure-and-assignment agreement with them. Id. at 5–8 (¶¶ 21–29, 31, 33).

[39] Id. at 7 (¶ 32).

[40] Id.

[41] See id.

four Patents. Kenu therefore moves to dismiss Mr. Dror's complaint under Federal Rule of Civil Procedure 12(b)(1).

### 1.1   Governing Law

Under the Declaratory Judgment Act, "[i]n a case of actual controversy within its jurisdiction, . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). The dispute must be "'definite and concrete, touching the legal relations of parties having adverse legal interests'; and . . . 'real and substantial' and 'admit of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.'" *MedImmune, Inc. v. Genetech, Inc.*, 549 U.S. 118, 127 (internal brackets omitted) (quoting *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240–41 (1937)). "'Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'" *Id.*

"The party claiming declaratory judgment jurisdiction has the burden to establish that jurisdiction existed at the time the claim was filed." *First Data Corp. v. Inselberg*, 870 F.3d 1367, 1372 (Fed. Cir. 2017) (citing *Powertech Tech. Inc. v. Tessera, Inc.*, 660 F.3d 1301, 1306 (Fed. Cir. 2011)). To establish jurisdiction, "a declaratory judgment plaintiff must allege an affirmative act by the patentee relating to the enforcement of [its] patent rights." *3M Co. v. Avery Dennison Corp.*, 673 F.3d 1372, 1377 (Fed. Cir. 2012) (quoting *SanDisk Corp. v. STMicroelectronics, Inc.*, 480 F.3d 1372, 1380–81 (Fed. Cir. 2007)). "And, of course, if 'a [declaratory-judgment plaintiff] has actually been charged with infringement of the patent, there is, *necessarily*, a case or controversy adequate to support declaratory judgment jurisdiction.'" *Id.* at 1379 (emphasis in original, internal brackets omitted) (quoting *Cardinal Chem. Co. v. Morton Int'l, Inc.*, 508 U.S. 83, 96 (1993)).

### 1.2    Application

#### 1.2.1    The 714 and 412 Patents

Mr. Dror alleges that Kenu affirmatively and expressly charged that Mr. Dror's IDStore Mount infringes Kenu's patents, first in a notice to Amazon and then in a letter sent directly to Mr. Dror.[42] Mr. Dror alleges that Kenu additionally threatened to sue Mr. Dror if he tried to sell his IDStore Mount again (whether on Amazon or anywhere else).[43] Kenu's charging Mr. Dror with infringing its patents and threatening to sue him gives rise to a case or controversy that supports declaratory-judgment jurisdiction. *Cf. 3M*, 673 F.3d at 1377.

Kenu claims that, in its letter, "it specifically informed [Mr.] Dror that it was *not* intending to sue him for infringement" and argues that its letter therefore does not give rise to a justiciable controversy.[44] This argument fails. First, Kenu's charging Mr. Dror with infringing its patents can give rise to a justiciable controversy even absent an explicit threat to sue. *3M*, 673 F.3d at 1379; *accord ActiveVideo Networks, Inc. v. Trans Video Elecs., Ltd.*, 975 F. Supp. 2d 1083, 1091 (N.D. Cal. 2013) ("[A]n explicit threat is not necessary. Indeed, there need not be any kind of threat. So long as there is an actual charge of infringement, or even an effective charge of infringement, that is enough to give rise to a case or controversy, particularly where a specific infringing product is identified by the patentee.") (citations omitted). Second, Kenu did threaten to sue Mr. Dror — it said it was refraining from doing so only because Amazon removed Mr. Dror's sales listings (and

---

[42] FAC – ECF No. 25 at 10 (¶ 44); FAC Ex. E-3 (Kenu letter to Dror) – ECF No. 25-6 at 15 (Kenu's General Counsel wrote, "We remain firm in our belief that the IDStore Universal Air Vent Cellphone Mount infringes Kenu's intellectual property rights. You may have noted that Kenu actively enforces its patent portfolio. While Kenu tries to resolve matters informally, we have zero tolerance for infringing items.").

[43] FAC – ECF No. 25 at 10 (¶ 44); FAC Ex. E-3 (Kenu letter to Dror) – ECF No. 25-6 at 15 (Kenu's General Counsel wrote, "Although we had not been planning to file suit against IDStore in view of the Amazon takedown, please be aware that Kenu will not hesitate to seek prompt and effective judicial relief should this matter be pressed further."). Kenu's threat to sue was not limited to Mr. Dror's selling the IDStore Mount on Amazon and is reasonably construed as a threat to sue if Mr. Dror were to sell his IDStore Mount anywhere. *Accord* FAC – ECF No. 25 at 10 (¶ 44).

[44] Def. MTD Reply – ECF No. 28 at 6 (emphasis in original); *accord* Def. MTD – ECF No. 26 at 12.

thereby prevented Mr. Dror from selling his IDStore Mount on Amazon) and threatened that it would sue Mr. Dror if he pressed the matter further.[45]

Kenu points out that it has not sued Mr. Dror in the 21 months since it sent its letter.[46] But "the passage of time does not counsel against finding declaratory judgment jurisdiction if 'the relevant circumstances' surrounding the patentee's assertion of patent rights 'have not changed despite the passage of time.'" *3M*, 673 F.3d at 1380–81 (quoting *Ass'n for Molecular Pathology v. U.S. Patent and Trademark Office*, 653 F.3d 1329, 1346 (Fed. Cir. 2012)). The relevant circumstances have not changed. Amazon took down Mr. Dror's IDStore Mount sales listings because Kenu filed its complaint.[47] The fact that Kenu has not sued Mr. Dror during the time that Mr. Dror has not been selling his IDStore Mount does not obviate its threat to sue him if he were to start doing so again. *Cf. ActiveVideo Networks*, 975 F. Supp. 2d. at 1088 ("[E]ven a statement that the patentee has no plan to sue does not necessarily eliminate a case or controversy.").

Kenu also claims that a favorable judgment here would not redress Mr. Dror's injuries. Kenu asserts that what Mr. Dror really wants is to be able to list his IDStore Mount on Amazon again. But even if Mr. Dror wins a judgment against Kenu in this litigation, Kenu contends that Amazon might independently decide not to relist Mr. Dror's IDStore Mount. Thus, Kenu argues, Mr. Dror lacks Article III standing because a favorable judgment would not give him the relief he seeks.[48] This argument does not persuade. First, Mr. Dror's claim is not limited to selling his IDStore Mount on Amazon. He also complains that Kenu's threat of litigation prevents him from selling his IDStore Mount through any channel.[49] A favorable judgment here would redress that injury.

---

[45] Kenu cites *Allied Mineral Products, Inc. v. OSMI, Inc.*, 870 F.3d 1337 (Fed. Cir. 2017) to support its argument that there is no subject-matter jurisdiction. But as Kenu acknowledges, the declaratory-judgment defendant in *Allied Mineral* "never directed any conduct toward [the declaratory-judgment plaintiff] itself, and specifically never threatened [the plaintiff] with suit." Def. MTD – ECF No. 26 at 11 (emphasis removed). Here, Kenu directly charged Mr. Dror with infringing its patents and threatened to sue Mr. Dror.

[46] Def. MTD – ECF No. 26 at 12; Def. MTD Reply – ECF No. 28 at 6.

[47] FAC – ECF No. 25 at 11 (¶ 54).

[48] Def. MTD – ECF No. 26 at 13; Def. MTD Reply – ECF No. 28 at 7–8.

[49] *See* FAC – ECF No. 25 at 11 (¶ 54) (alleging that Mr. Dror has been prevented from selling his IDStore Mount due to Kenu's threat to sue him, without limiting sales to Amazon), 15 (¶ 68) ("A

Second, even if Mr. Dror wanted to sell his IDStore Mount only on Amazon, a judgment in his favor would remove at least one hurdle to his doing so by removing Kenu's infringement claim as a basis for Amazon's refusing to list the IDStore Mount. This is sufficient to establish redressability.

The Federal Circuit's decision in *Caraco Pharmaceutical Laboratories, Ltd. v. Forest Laboratories, Inc.*, 527 F.3d 1278 (Fed. Cir. 2008), is instructive on this point. The declaratory-judgment plaintiff in *Caraco* sought Food and Drug Administration ("FDA") approval of a generic drug and identified two of the defendant's patents that might cover its generic. *Id.* at 1288. The defendant sued for infringement on one of its patents (in a separate lawsuit) but not on the other. *Id.* The plaintiff brought a declaratory-judgment suit against the defendant on the other patent. *Id.* The Federal Circuit held that the plaintiff had established redressability. *Id.* at 1293. The plaintiff (1) needed a judgment of invalidity or noninfringement on the first patent (in addition to the patent-in-suit) to obtain FDA approval and (2) needed FDA approval before it could start selling its generic. On those facts, the Federal Circuit held that removing one hurdle on the plaintiff's path to approval and sale of its generic was sufficient to establish redressability and Article III standing in its declaratory-judgment suit. *Id.*; *see generally Larson v. Valente*, 456 U.S. 228, 243 n.15 (1982) ("[A] plaintiff satisfies the redressability requirement when he shows that a favorable decision will relieve a discrete injury to himself. He need not show that a favorable decision will relieve his *every* injury.") (emphasis in original). Similarly, even if Mr. Dror ultimately wants Amazon's approval to sell his IDStore Mount, a favorable judgment here would remove one hurdle to obtaining that approval, which is sufficient for redressability. Kenu cites no on-point cases to the contrary.[50]

---

substantial, immediate and real controversy exists between Dror and Kenu based on the Amazon Complaint and on Kenu's that has kept Dror from selling the IDStore Product on Amazon or through other channels.").

[50] *See* Def. MTD – ECF No. 26 at 13 (citing no cases other than cases discussing Article III standards generally and *Allied Mineral*, which does not address redressability); Def. MTD Reply – ECF No. 28 at 7–8 (citing no cases).

### 1.2.2    The 923 and 585 Patents

Mr. Dror also seeks a declaratory judgment with respect to the 923 and 585 Patents, which are continuations of and claim the benefits of the filing date of the patent applications that led to the issuance of the 714 and 412 Patents and include the same specifications and similar claim elements.[51]

Courts have held that a patentee's accusing a party in litigation of infringing its patents can give rise to jurisdiction for the accused party to bring declaratory-judgment claims with respect to related patents of the patentee. *See, e.g.*, *Arkema Inc. v. Honeywell, Int'l, Inc.*, 706 F.3d 1351, 1358 (Fed. Cir. 2013) ("Here, [patentee] has accused [declaratory-judgment plaintiff] of infringing its rights with respect to [product] in litigation over the closely related '366 patent and the European patent claiming methods of using [product]. This creates a sufficient affirmative act on the part of the patentee for declaratory judgment purposes."); *Seaboard Int'l, Inc. v. Cameron Int'l Corp.*, No. 1:13-CV-00281-MLH-SKO, 2013 WL 3936889, at *9 (E.D. Cal. July 30, 2013) (holding that where all patents were part of the same family and contained nearly identical claims, "[patentees'] assertions of the closely related '925 and '237 patents against [declaratory-judgment plaintiff] through patent infringement lawsuits are 'sufficient affirmative acts for declaratory judgment purposes' with respect to the [declaratory-judgment] Patents" to give rise to subject-matter jurisdiction) (internal brackets omitted) (quoting *Arkema*, 706 F.3d at 1357–58).

Kenu tries to distinguish this line of authority on the ground that it involved patentees that filed full infringement lawsuits with respect to the related patents, whereas it never filed a full lawsuit against Mr. Dror with respect to any patent.[52] As the Federal Circuit has held, however, "a specific threat of infringement litigation by the patentee is not required to establish jurisdiction, and a declaratory judgment action cannot be defeated simply by the stratagem of a correspondence that avoids magic words such as 'litigation' or 'infringement.'" *ABB Inc. v. Cooper Indus., LLC*, 635 F.3d 1345, 1348 (Fed. Cir. 2011) (some nested quotation marks omitted) (quoting *Hewlett-*

---

[51] FAC – ECF No. 25 at 4–5 (¶¶ 18–19).

[52] Def. MTD Reply – ECF No. 28 at 9.

*Packard Co. v. Acceleron LLC*, 587 F.3d 1358, 1362 (Fed. Cir. 2009)). For example, in *Miotox LLC v. Allergan, Inc.*, No. 2:14-cv-08723-ODW(PJWx), 2015 WL 2084493 (C.D. Cal. May 5, 2015), a patentee sued a licensee for breach of the license agreement, unjust enrichment, and related claims — but not for patent infringement — and the licensee countersued for a declaratory judgment for infringement, invalidity, and unenforceability of three patents that were not mentioned in the license agreement but were related to the patent in the license agreement. *Id.* at *2. The patentee argued that because it did not bring an infringement action against the licensee (as opposed to only a breach-of-contract action), there was no immediate and real controversy sufficient to establish declaratory-judgment jurisdiction. *Id.* at *5. The court rejected this argument and held that there was jurisdiction, writing that "[t]he fact that [patentee] *could* bring an infringement action is what is relevant, not whether [patentee] has actually brought an infringement action. Therefore, there is sufficient immediacy and reality of an infringement action against [licensee]." *Id.* at *6 (emphasis in original). Kenu threatened to sue Mr. Dror with respect to at least the 714 and 412 Patents, and it cites no cases holding that this threat is any less sufficient to give rise to declaratory-judgment jurisdiction with respect to the related 923 and 585 Patents than a full infringement lawsuit would have been.[53]

Mr. Dror has pleaded a justiciable case or controversy and has established subject-matter jurisdiction. The court denies Kenu's motion to dismiss the complaint for lack of subject-matter jurisdiction.

## 2. Invalidity

Kenu argues that Mr. Dror fails to adequately plead his invalidity claims because he fails to allege facts from which one could plausibly infer that any of the four Patents are invalid. Kenu

---

[53] *See* Def. MTD – ECF No. 26 at 13–14 (citing no cases other than *Prasco, LLC v. Medicis Pharmaceutical Corp.*, 537 F.3d 1329 (Fed. Cir. 2008), a case where the patentee did not know about the existence's of the declaratory-judgment plaintiff's product until after the plaintiff filed its lawsuit, did not accuse the plaintiff of infringement, and did not restrain the plaintiff's ability to market its product); Def. MTD Reply – ECF No. 28 at 8–9 (trying to distinguish Mr. Dror's cases on the grounds that they involved full infringement lawsuits but citing no cases of its own holding that jurisdiction is lacking where there is no full infringement lawsuit).

therefore moves to dismiss Mr. Dror's invalidity claims under Federal Rule of Civil Procedure 12(b)(6).

## 2.1 Governing Law

In patent cases, the law of the regional circuit (rather than that of the Federal Circuit) governs the review of motions to dismiss for failure to state a claim under Rule 12(b)(6). *First Data*, 870 F.3d at 1372 (citing *K-Tech. Telecomms., Inc. v. Time Warner Cable, Inc.*, 714 F.3d 1277, 1282 (Fed. Cir. 2013)).

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief" to give the defendant "fair notice" of what the claims are and the grounds upon which they rest. *See* Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A complaint does not need detailed factual allegations, but "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a claim for relief above the speculative level[.]" *Twombly*, 550 U.S. at 555 (internal citations omitted).

To survive a motion to dismiss, a complaint must contain sufficient factual allegations, which when accepted as true, "'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 557). "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (internal quotation marks omitted) (quoting *Twombly*, 550 U.S. at 557).

If a court dismisses a complaint, it should give leave to amend unless the "pleading could not possibly be cured by the allegation of other facts." *United States v. United Healthcare Ins. Co.*, 848 F.3d 1161, 1182 (9th Cir. 2016) (citations and internal quotation marks omitted). But "leave

1    to amend may be denied when a plaintiff has demonstrated a 'repeated failure to cure deficiencies

2    by amendments previously allowed.'" *Id.* at 1183 (quoting *Eminence Capital, LLC v. Aspeon, Inc.*,

3    316 F.3d 1048, 1052 (9th Cir. 2003)).

### 2.2    Application

5        At least one court in this district (a court that Kenu cites) has denied a motion to dismiss

6    invalidity claims where a counterclaim plaintiff bringing a declaratory-judgment claim for

7    invalidity supported its claims with explanations of its theories of invalidity and references to

8    specific pieces of prior art. *Fitness Anywhere LLC v. Woss Enters. LLC*, No. 14-cv-01725-BLF,

9    2014 WL 4802432, at *2 & n.3 (N.D. Cal. Sept. 26, 2014). The counterclaim plaintiff there

10   alleged that the patents-in-suit were invalid because the alleged inventions had been disclosed in

11   the prior art (including prior patents), were obvious in light of the prior art, and were vague and

12   indefinite.[54] Additionally, the counterclaim plaintiff attached as an exhibit to its complaint a patent

13   that the court held "may be argued to be prior art." *Id.* at *2 n.3. The court held that these

14   allegations and references to a specific piece of prior art were sufficient to withstand a motion to

---

[54] "Each alleged patent in suit is invalid, void, and unenforceable because: (a) The alleged invention of
said patent was known or used by others in this country or patented or described in a printed
publication in this or a foreign country before the invention thereof by the applicant for patent. (b) The
alleged invention of said patent was patented or described in a printed publication in this or a foreign
country or in public use or on sale in this country more than one year prior to the date of the
application for patent in the United States. (c) The alleged invention of said patent was described in a
patent granted on an application for patent by another filed in the United States before the invention
thereof by the applicant for patent. (d) The patent describes and claims alleged inventions, the making
of which did not involve the inventive faculty but only the obvious judgment, knowledge and
mechanical skill possessed by persons having ordinary skill in the art to which the alleged invention
pertains. [Counterclaim plaintiff] avers that the subject matter claimed in said patent fails to comply
with Title 35, § 102 and § 103 of the United States Code in that the differences between the subject
matter claimed in such patent and the prior art are such that the subject matter as a whole was either
fully anticipated by the prior art or would have been obvious at the time the alleged invention was
made to a person having knowledge of such prior art and having ordinary skill in the art to which such
claimed subject matter pertains. (e) One or more claims of the patent is fatally vague and indefinite,
and therefore invalid and void, because it does not particularly point out and distinctly claim the
subject matter of the alleged invention, as required by Title 35, § 112 of the United States Code." First
Amended Answer at 1–2, *Fitness Anywhere LLC v. Woss Enters. LLC*, No. 5:14-cv-01725-BLF (N.D.
Cal. Aug. 20, 2014), ECF No. 31; *see Fitness Anywhere*, 2014 WL 4802432, at *2 ("Defendant
explains these grounds of invalidity in detail in its affirmative defenses.").

dismiss. *Id.* at *2 ("Plaintiff has sufficient notice of the grounds underlying Defendant's [invalidity] counterclaim.").

Here, Mr. Dror begins by alleging that the Patents are "invalid under the Patent Laws of the United States of America, 35 U.S.C. § 1 et seq., including but not limited to §§ 101, 102, 103 and 112,"[55] and then goes on to highlight a specific theory of invalidity — obviousness under 35 U.S.C. § 103 — and identifies five specific pieces of prior art that (so he claims) render the Patents obvious.[56] This places Kenu on notice as to one of the main bases for Mr. Dror's invalidity claims akin to the notice that the counterclaim plaintiff provided in *Fitness Anywhere*. Additionally, under this district's Patent Local Rules, 14 days after when Kenu serves its answer or 14 days after the initial case-management conference (whichever is later), Mr. Dror will be required to serve detailed invalidity contentions that, among other things, identify and chart each item of prior art that allegedly anticipates each asserted claim or renders it obvious and documents in support thereof. N.D. Cal. Patent L.R. 3-5(a). Kenu thus will not be left in the dark in defending itself against Mr. Dror's claims.

Kenu cites to a number of cases to argue that Mr. Dror's invalidity allegations are insufficient to withstand a motion to dismiss. *See J & K IP Assets, LLC v. Armaspec, Inc.*, No. 3:17-cv-07308-WHO, 2018 WL 3428757, at *2 (N.D. Cal. July 16, 2018); *PageMelding, Inc. v. ESPN, Inc.*, No. C 11-06263 WHA, 2012 WL 3877686, at *3 (N.D. Cal. Sept. 6, 2012); *Xilinx, Inc. v. Invention Inv. Fund I LP*, No. C 11-0671 SI, 2011 WL 3206686, at *6–7 (N.D. Cal. July 27, 2011).[57] In

---

[55] FAC – ECF No. 25 at 16 (¶ 72), 18 (¶ 84), 19 (¶ 96), 21 (¶ 108).

[56] *Id.* at 16 (¶ 73), 18 (¶ 85), 20 (¶ 97), 21–22 (¶ 109).

[57] Kenu also cites *Comcast Cable Communications, LLC v. OpenTV, Inc.*, 319 F.R.D. 269 (N.D. Cal. 2017), but that case involved declaratory-judgment claims for noninfringement, as opposed to invalidity. *Id.* at 271. Noninfringement and invalidity are not entirely analogous. Among other things, whereas invalidity can be determined in the context of the patent-in-suit alone, noninfringement can be determined only in the context of a specific product accused of infringing the patent. *See, e.g.*, *ASUSTeK Computer Inc. v. AFTG-TG LLC*, No. 5:CV 11-00192-EJD, 2011 WL 6845791, at *13 (N.D. Cal. Dec. 29, 2011) ("[W]ithout identifying the accused products, there simply is no way to adjudicate an infringement claim."). The plaintiff in *Comcast* did not sufficiently plead what its products were, leaving the defendant and the court unable to determine what the plaintiff sought by way of a declaration of noninfringement. *See Comcast*, 319 F.R.D. at 273–74 ("To return to the example of count eight, it is impossible to infer from the amended complaint even a general idea of what [plaintiff's] Xfinity TV Anywhere or Xfinity.TV.net services are, much less how they fail to

those cases, however, the declaratory-judgment plaintiffs simply recited various sections of the patent statutes and then asserted invalidity as a conclusion, without more. In no case did the plaintiff highlight a specific theory of invalidity or identify any specific pieces of prior art that allegedly rendered the patents-in-suit invalid. *Cf. J & K IP Assets*, 2018 WL 3428757, at *2 (noting that "[counterclaim plaintiff] asserts counterclaims for declaratory judgment that the '424 patent is invalid as anticipated under 35 U.S.C. § 102 and obvious under 35 U.S.C. § 103, but it fails to include any allegations identifying prior art or explaining how that art anticipates or renders obvious any particular claims of the '424 patent"); *PageMelding*, 2012 WL 3877686, at *3 (noting that counterclaim plaintiff alleged only that "[o]ne or more claims of the '577 patent are invalid for failing to comply with one or more of the requirements of the Patent Laws of the United States, 35 U.S.C. §§ 100, et seq., including, but not limited to, §§ 101, 102, 103, and/or 112," without more); *Xilinx*, 2011 WL 3206686, at *6 (noting that declaratory-judgment plaintiff "alleg[es] only that the patents fail 'to comply with one or more of the requirements of the patent laws of the United States, including, without limitation, 35 U.S.C. §§ 101, 102, 103, and/or 112,'" without more). In the absence of Kenu's citing any case where a court has held that allegations analogous to Mr. Dror's were insufficient to withstand a motion to dismiss, the court does not dismiss Mr. Dror's invalidity claims here. *Cf. Fitness Anywhere*, 2014 WL 4802432, at *2.[58]

---

meet the [patent-in-suit's] limitation of 'determining, using an electronic program guide, an interactive application associated with a broadcast program.' Again, count eight is representative of counts one through ten, all of which similarly lack adequate factual allegations to support inferences of non-infringement.") (citations to record omitted). Mr. Dror's invalidity claims do not present an analogous issue.

[58] Several courts in this district have taken a different approach than the approach that the cases that Kenu cites have taken. Those courts have found a declaratory-judgment plaintiff's simply alleging that the patents-in-suit are invalid under various sections of the patent statutes, without pleading anything more, to be sufficient to withstand a motion to dismiss. *ASUSTeK*, 2011 WL 6845791, at *13; *Wistron Corp. v. Phillip M. Adams & Assocs., LLC*, No. C-10-5548 EMC, 2011 WL 1654466, at *11 (N.D. Cal. Apr. 28, 2011). Those courts cite to this district's Patent Local Rules and have held that "[b]y requiring the party claiming invalidity to flesh out and support its invalidity contentions early on, the Patent Local Rules fulfill the function of *Twombly* and *Iqbal*" and thus do not require a declaratory-judgment plaintiff to plead additional facts regarding his invalidity contentions in his complaint. *ASUSTeK*, 2011 WL 6845791, at *13; *accord Wistron*, 2011 WL 1654466, at *11 (denying motion to dismiss invalidity claims that pleaded only that each patent-in-suit fails "to satisfy the conditions and requirements for patentability as set forth inter alia, in Sections 101, 102, 103, and/or 112 of Title 35 of the United States Code," without more, because "requiring a heightened pleading of invalidity

### 3. Inequitable Conduct

Kenu moved to dismiss the claims that the Patents are unenforceable due to Kenu's alleged inequitable conduct on the ground that Mr. Dror did not plead his claims with particularity under Federal Rule of Civil Procedure 9(b).

### 3.1 Governing Law

"'Inequitable conduct . . . must be pled with particularity' under Rule 9(b)." *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1326 (Fed. Cir. 2009) (internal brackets omitted) (quoting *Ferguson Beauregard/Logic Controls v. Mega Sys., LLC*, 350 F.3d 1327, 1344 (Fed. Cir. 2003)); *see also id.* ("[Federal Circuit] law, not the law of the regional circuit, [applies] to the question of whether inequitable conduct has been pleaded with particularity under Rule 9(b).") (citing *Cent. Admixture Pharmacy Servs., Inc. v. Advanced Cardiac Sols., P.C.*, 482 F.3d 1347, 1356 (Fed. Cir. 2007)). "[T]o plead the 'circumstances' of inequitable conduct with the requisite 'particularity' under Rule 9(b), the pleading must identify the specific who, what, when, where, and how of the material misrepresentation or omission committed before the PTO." *Id.* at 1328. "Moreover, although 'knowledge' and 'intent' may be averred generally, a pleading of inequitable conduct under Rule 9(b) must include sufficient allegations of underlying facts from which a court may reasonably infer that a specific individual (1) knew of the withheld material information or of the falsity of the material misrepresentation, and (2) withheld or misrepresented this information with a specific intent to deceive the PTO." *Id.* at 1328–29.

"Pleading on 'information and belief' is permitted under Rule 9(b) when essential information lies uniquely within another party's control, but only if the pleading sets forth the specific facts

---

would circumvent this Court's Patent Local Rules which require detailed disclosures as to invalidity contentions soon after the suit is filed. . . . By requiring the party claiming invalidity to flesh out and support its invalidity contentions early on, the Patent Local Rules fulfill the function of *Twombly* and *Iqbal*."). In light of the fact that Mr. Dror has highlighted an invalidity theory and identified specific pieces of prior art — i.e., has done more than simply recite sections of patent statutes and assert invalidity as a conclusion — the court need not decide between the approaches taken by cases like *ASUSTeK* and *Wistron* and the cases that Kenu cites. *Cf. Fitness Anywhere*, 2014 WL 4802432, at *2 (noting that "[c]ourts in this district have disagreed over the amount of specificity required to satisfy Rule 8(a) when an accused infringer seeks a declaration of patent invalidity" and declining to weigh in on the debate in light of counterclaim plaintiff's more detailed allegations in that case).

upon which the belief is reasonably based." *Id.* at 1330. "Where pleading is permitted on information and belief, a complaint must adduce specific facts supporting a strong inference of fraud or it will not satisfy even a relaxed pleading standard." *Id.* at 1330 n.7 (quoting *Wexner v. First Manhattan Co.*, 902 F.2d 169, 172 (2d Cir. 1990)).

### 3.2 Application

Mr. Dror advances two theories for claiming that the Patents are invalid due to inequitable conduct. He pleaded neither with particularity.

Mr. Dror first claims that David E. Yao's declaration to the USPTO during the prosecution of the 714 Patent was fraudulent. To recap, the USPTO identified the 306 Application's disclosure of an "adjustable clamping element" as prior art that rendered the claims (in what would become the 714 Patent) obvious. In response, Mr. Yao submitted a declaration stating that he invented the adjustable mounting clip and the use of gripping clips in the 306 Application and that those aspects of the 306 Application thus were not disqualifying prior art. Mr. Dror contends that Mr. Yao's declaration is false because (Mr. Dror claims) other inventors contributed to the 306 Application and Kenneth Y. Minn was a co-inventor of the 714 Patent. Mr. Dror does not identify the portions of the 306 Application that had contributions of other inventors (and does not plead that other inventors contributed the adjustable mounting clip and use of gripping clips to the 306 Application) and does not identify the portions of the 714 Patent that had Mr. Minn's contribution (and does not plead that Mr. Minn contributed the adjustable mounting clip and use of gripping clips to the 714 Patent). Mr. Dror's factual allegations about Mr. Minn and other inventors are not inconsistent with Mr. Yao's being truthful when he said that he invented the adjustable-mounting-clip and use-of-gripping-clips portions of the 306 Application (with the other inventors' contributions being to other portions of the 306 Application) and his similarly contributing those clips to the 714 Patent (with Mr. Minn's contributions being to other portions of the 714 Patent). Consequently, Mr. Dror fails to adequately plead with particularity how Mr. Yao's declaration is false. *Cf. Finjan, Inc. v. Juniper Network, Inc.*, No. C 17-05659 WHA, 2018 WL 4181905, at *4–5 (N.D. Cal. Aug. 31, 2018) (similarly rejecting counterclaim plaintiff's inequitable-conduct theory that an inventor's declaration that he invented certain claims in a patent must have been false

because other inventors also contributed to the patent because the plaintiff's allegations did not foreclose the possibility that the declarant inventor alone invented the claims at issue and the other co-inventors' contributions were to other claims not at issue).[59]

Mr. Dror next claims that Kenu fraudulently omitted a John Duran as a co-inventor on the D707 Patent, a predecessor to the Patents at issue here, in order to prevent Mr. Duran's employer CamelBak from having an ownership interest in the D707 Patent. Mr. Dror's complaint provides no additional details about who Mr. Duran or CamelBak are, what relationship (if any) they have to Kenu or the D707 Patent, why Mr. Duran should have been listed as an inventor on the D707 Patent, or what Kenu supposedly did to exclude him. This does not satisfy the Rule 9(b) requirement to plead inequitable conduct with particularity. *Cf. Brixham Sols. Ltd. v. Juniper Networks, Inc.*, No. 13-cv-00616-JCS, 2014 WL 250204, at *7 (N.D. Cal. Jan. 22, 2014) ("Merely alleging generally that an inventor shared ideas with other individuals on the same subject matter . . . does not meet the particularity requirement of Rule 9(b) or establish co-inventorship under the guidelines set forth by the Federal Circuit. In the absence of allegations identifying the specific individual or individuals who allegedly co-invented the claimed invention and setting forth specific facts showing how each of these individuals contributed to the conception of a particular claim or claims, [counterclaim plaintiff]'s inequitable conduct allegation based on this theory is insufficient as a matter of law.").

Mr. Dror argues that he has sufficiently pleaded his inequitable-conduct claims "on information in belief" in light of the fact that "the information as to who contributed to the invention of Kenu's patents at issue is uniquely within control of Kenu and the patents' inventors."[60] Even when pleading on information and belief, however, Mr. Dror must still adduce

---

[59] Mr. Dror also alleges that Mr. Yao failed to inform his then-employers Joby and DayMen about the inventions that became the subject of the Patents here. FAC – ECF No. 25 at 5–8 (¶¶ 21–29, 31, 33). What Mr. Yao did or did not do vis-à-vis his employers is not relevant to what he did or did not do vis-à-vis the USPTO, which is the relevant inquiry for an inequitable-conduct claim. *See Exergen*, 575 F.3d at 1327 n.3 ("The substantive elements of inequitable conduct are: (1) an individual associated with the filing and prosecution of a patent application made an affirmative misrepresentation of a material fact, failed to disclose material information, or submitted false material information; and (2) the individual did so with a specific intent to deceive the PTO.") (citing authorities).

[60] Pl. MTD Opp'n – ECF No. 27 at 21.

specific facts supporting a strong inference of fraud. *Exergen*, 575 F.3d at 1330 & n.7. Mr. Dror's speculation that Kenu must have done something wrong, untethered to specific facts, fails to meet the standard set out in Rule 9(b). *Cf. Finjan*, 2018 WL 4181905, at *4; *Brixham*, 2014 WL 250204, at *7.

Mr. Dror has not sufficiently pleaded his inequitable-conduct claims. The court grants Kenu's motion to dismiss these claims. The court grants Mr. Dror leave to amend.

### 4. Unfair Competition Law

Kenu argues that Mr. Dror fails to adequately a claim under the California UCL because he does not plead that Kenu engaged in unlawful, unfair, or fraudulent practices. Kenu therefore moves to dismiss Mr. Dror's UCL claim under Rule 12(b)(6) and, with respect to the fraudulent prong of the UCL, under Rule 9(b).

### 4.1 Governing Law

The UCL prohibits any "unlawful, unfair or fraudulent business act or practice[.]" Cal. Bus. & Prof. Code § 17200.

"Under the 'unlawful' prong, 'the UCL borrows violations of other laws and treats them as unlawful practices that the unfair competition law makes independently actionable.'" *AlterG, Inc. v. Boost Treadmills LLC*, 388 F. Supp. 3d 1133, 1155 (N.D. Cal. 2019) (internal brackets and some nested quotation marks omitted) (quoting *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012)).

"The 'unfair' prong of the UCL prohibits a business practice that 'violates established public policy or if it is immoral, unethical, oppressive or unscrupulous and causes injury to consumers which outweighs its benefits.'" *Id.* (quoting *McKell v. Wash. Mut., Inc.*, 142 Cal. App. 4th 1457, 1473 (2006)). "The California Supreme Court has held that 'when a plaintiff who claims to have suffered injury from a direct competitor's "unfair" act or practice invokes section 17200, the word "unfair" in that section means conduct that threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws because its effects are comparable to or the same

as a violation of the law, or otherwise significantly threatens or harms competition.'" *Id.* (quoting *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 186–87 (1999)).

"To state a claim under the fraudulent prong of the UCL, 'it is necessary only to show that members of the public are likely to be deceived' by the business practice or advertising at issue." *Id.* at 1156 (quoting *In re Tobacco II Cases*, 46 Cal. 4th 298, 312 (2009)). "The UCL limits standing to those individuals who had 'suffered injury in fact and has lost money or property as a result of the unfair competition.'" *Id.* (quoting Cal. Bus. & Prof. Code § 17204). "The California Supreme Court has interpreted this standing provision as 'imposing an actual reliance requirement on plaintiffs prosecuting a private enforcement action under the UCL's fraud prong.'" *Id.* (internal brackets omitted) (quoting *In re Tobacco*, 46 Cal. 4th at 326). "Thus, 'courts have recognized that UCL fraud plaintiffs must allege their *own* reliance — not the reliance of third parties — to have standing under the UCL.'" *Id.* (emphasis in original) (citing cases). A claim under the fraudulent prong of the UCL is subject to Rule 9(b)'s heightened pleading requirements. *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009).

### 4.2 Application

Mr. Dror does not plead an unlawful business act or practice. Mr. Dror claims that Kenu obtained the Patents by engaging in intentionally untruthful behavior,[61] but as discussed above in connection with Mr. Dror's inequitable-conduct claims, those allegations are inadequately pleaded. They therefore cannot serve as the basis for a UCL claim.

Mr. Dror does not plead an unfair business act or practice. As a direct competitor of Kenu, Mr. Dror must allege a practice that amounts to a violation of antitrust law or otherwise significantly threatens or harms competition. *Cf. Levitt v. Yelp! Inc.*, 765 F.3d 1123, 1137 (9th Cir. 2014) (citing *Cel-Tech*, 20 Cal. 4th at 187). "Injury to a competitor is not equivalent to injury to competition; only the latter is the proper focus of antitrust laws." *Cel-Tech*, 20 Cal. 4th at 186. "[C]ase law suggests that the misconduct of a direct competitor must rise to significantly more

---

[61] Pl. MTD Opp'n – ECF No. 27 at 22.

serious levels than what has been alleged here to sustain a finding of unfairness under the UCL." *Cf. AlterG*, 388 F. Supp. 3d at 1155–56 (citing cases).

Mr. Dror does not plead a fraudulent business act or practice. Setting aside Mr. Dror's allegations about Kenu's allegedly fraudulent behavior before the USPTO (which, as discussed above, are inadequately pleaded), Mr. Dror does not cognizably plead with particularity that Kenu made any false or fraudulent statements, much less that he relied on any such statements. *Cf. AlterG*, 388 F. Supp. 3d at 1156 (dismissing UCL claim where "the complaint explains that [plaintiff] was harmed by Defendants' fraud because *customers* relied on the misrepresentations and avoided [plaintiff]'s products, there is no allegation that [plaintiff] itself relied on Defendants' statements") (emphasis in original).

Mr. Dror has not sufficiently pleaded his UCL claim. The court grants Kenu's motion to dismiss this claim. The court grants Mr. Dror leave to amend.

## CONCLUSION

The court grants Kenu's motion to dismiss Mr. Dror's inequitable-conduct and UCL claims and gives Mr. Dror leave to amend. The court otherwise denies Kenu's motion to dismiss.

If Mr. Dror wants to replead his inequitable-conduct and UCL claims, he may file an amended complaint within 21 days of the date of this order. (If he files an amended complaint, he must also file as an attachment a blackline of his new amended complaint against his current First Amended Complaint.)

**IT IS SO ORDERED.**

Dated: November 1, 2019

_____
LAUREL BEELER
United States Magistrate Judge